## RIVERSIDE NAT. BANK v. PREDMORE.

(Circuit Court of Appeals, Third Circuit. November 1, 1913.)

### No. 1,749.

CHATTEL MORTGAGES (§ 63*)—VALIDITY—AFFIDAVIT FOR RECORDING UNDER NEW JERSEY STATUTE.

Chattel Mortgage Act N. J. (P. L. 1902, p. 487, 1 Comp. St. 1910, p. 463) § 4, provides that a chattel mortgage shall be void as against creditors, etc., unless recorded, having annexed thereto the affidavit of the mortgagee stating the consideration for the mortgage and as nearly as possible the amount due and to become due thereon. A bankrupt corporation executed to a bank a chattel mortgage for $1,500 to secure three notes, of $500 each, which were given and the proceeds of the discount credited to the bankrupt's account. It was agreed, however, that the third note was accepted subject to the approval of the bank's directors. The cashier filed the mortgage for record, with his affidavit stating the consideration as $1,500 and describing the three notes. The directors disapproved the third loan of $500, but approved a further loan of $200, in addition to the $1,000 covered by the first two notes, whereupon the amount of the third note was charged back to bankrupt's account and a note for $200 was executed and discounted. *Held*, that the cashier's affidavit was correct and sufficient under the statute, the charging back of the amount of the third note being in effect a partial payment on the mortgage debt, and that the mortgage was valid as to the $1,000 due on the first two notes, but that the note for $200 subsequently given was not within the mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 125–135; Dec. Dig. § 63.*]

Appeal from the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

In the matter of the National Envelope Company, bankrupt; Winfield Predmore, trustee. The Riverside National Bank appeals from an order of the District Court disallowing its claim to a lien by virtue of a chattel mortgage. Reversed.

G. M. Hillman, of Mt. Holly, N. J., and John G. Horner, of Camden, N. J., for appellant.

Wilson & Carr and W. R. Carroll, all of Camden, N. J., for appellee.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge. This is an appeal from a decree of the court below, sitting as a court of bankruptcy, affirming an order of the referee in bankruptcy, in which the claim of the appellant, Riverside National Bank, against the bankrupt's estate for a priority in payment, based upon three promissory notes aggregating in amount $1,200.00, alleged to be secured by a chattel mortgage made by said company to the bank on goods and chattels in the possession of the trustee, as part of the bankrupt's estate, was refused. The facts necessary to the determination of the question involved are not in dispute and have been in the main stipulated into the record now before us. They are as follows:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

National Envelope Company, a corporation of the state of New Jersey, was, on the 15th day of February, 1912, duly adjudged a bankrupt, and on the 6th day of March, 1912, Winfield Predmore was duly appointed trustee of the estate of the said bankrupt. On July 5, 1911, the National Envelope Company, the bankrupt aforesaid, made and delivered to the Riverside National Bank its promissory note for $500.00, drawn to its own order, payable four months after date and indorsed by H. W. Hunter and W. H. Holt. This note was duly discounted by said bank and the proceeds thereof credited to the account of the National Envelope Company on July 5, 1911.

Shortly after the discounting of the note of July 5, 1911, and before maturity thereof, the National Envelope Company, by its president, H. W. Hunter, made application to the bank for a further loan. Albert L. Pancoast, cashier of the bank, was unwilling to make an additional loan, unless satisfactory security was given to cover not only such new loans as might be made, but also the existing loan upon the note of July 5, 1911. It was thereupon arranged between Hunter, acting for the company, and Pancoast, acting for the bank, that the company should execute and deliver to the bank a chattel mortgage upon all the company's personal property, for $1,500.00, as collateral security for the existing loan of $500.00, a new loan of $500.00, for which a note, dated July 21, 1911, was given by the company to the bank, and by the bank discounted and proceeds placed to credit of company, and a third loan of $500.00, "it being understood that this last loan was to be conditioned only and subject to the subsequent approval of the board of directors of the Riverside National Bank."

The execution and delivery of the chattel mortgage was duly authorized by a resolution of the board of directors of the National Envelope Company, at a meeting held in July, 1911. This resolution is in the following language:

"Whereas the National Envelope Company according to its charter has authority to borrow money and execute a mortgage whenever needed to carry on the business successfully, therefore be it resolved that we approve the suggestion of the president and authorize the giving and execution of a collateral chattel mortgage to the Riverside National Bank for $1,500, to cover three notes of $500 each, as needed for ready cash."

Pursuant to this arrangement, the company executed and delivered to the bank a chattel mortgage covering all its personal property, to secure the sum of $1,500.00; the mortgage was dated July 21, 1911, and was, on the 24th day of July, 1911, duly recorded in the office of the clerk of Burlington county, at Mt. Holly.

In further execution of the arrangement between Messrs. Hunter and Pancoast, acting respectively as aforesaid, the National Envelope Company, on July 22, 1911, one day after the date of said mortgage but two days before the date of its recording, made and delivered to the Riverside National Bank its promissory note for $500.00. This note represented the third loan above referred to, and was given by the company and accepted by the bank upon the understanding that the loan represented was conditional only and was subject to the subsequent approval of the board of directors of the said bank. This note was, however, discounted immediately and the proceeds thereof were,

on the 22d day of July, 1911, the day upon which the affidavit accompanying the chattel mortgage was made by the cashier of the bank, credited to the company's account. Fourteen days thereafter, the board of directors of said bank disapproved of said third loan of $500.00, and thereupon the same was charged back against the company's account. The board of directors, however, authorized a third loan of $200.00, and thereupon, on August 7, 1911, the company delivered to the bank its note for $200.00, payable four months after date. This note was duly discounted by the said bank and credited to the company's account on August 7th, the day of its date.

, The statute of the state of New Jersey, in regard to chattel mortgages and the recording thereof, among other things provides as follows:

"Every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against the subsequent purchasers and mortgagees in good faith, unless the mortgage, having annexed thereto an affidavit or affirmation made and subscribed by the holder of said mortgage, his agent, or attorney, stating the consideration of said mortgage and as nearly as possible the amount due and to grow due thereon, be recorded as directed in the succeeding section of this act," etc.

The affidavit annexed to said mortgage on behalf of the mortgagee, before the mortgage was lodged for record in the office of the clerk of Burlington county, was as follows:

"State of New Jersey, Burlington County—ss.:

"Albert L. Pancoast, cashier of the Riverside National Bank, the mortgagee named, being duly sworn on his oath, says that the true consideration of said mortgage is as follows, viz.: Fifteen hundred dollars loaned to said National Envelope Company on three promissory notes of five hundred dollars each, one dated July 5, 1911, and two dated July 21, 1911, and payable in four months from the date thereof, together with interest thereon at the rate of six per cent. per annum, this chattel mortgage being given to secure the payment of said notes and the renewals thereof and that there is due on said mortgage the sum of fifteen hundred dollars, besides lawful interest thereon from the twenty-first day of July, nineteen hundred and eleven.

"Albert L. Pancoast, Cashier.

"Sworn and subscribed this twenty-second day of July, A. D. 1911, before me,

"[Seal.] Chas. H. Ziegler, Justice of the Peace."

The sole question presented for determination is, does the affidavit of the mortgagee to the chattel mortgage annexed, meet and comply with the requirements of the fourth section of the statute of the state of New Jersey, as above quoted. The trustee challenges the sufficiency of the affidavit upon two grounds:

1. That it does not truly and correctly state the amount due and to grow due on said mortgage.

2. That it does not set forth the consideration of said mortgage with sufficient particularity of detail to acquaint creditors of the mortgagor with the complete transaction between the parties thereto.

On August 5, 1911, when the third note of $500.00, dated July 22, 1911, was charged back against the account of the said National En-

velope Company, the result was that the account of said National Envelope Company on that day was overdrawn to the amount of $24.62. This overdraft was taken care of, by crediting to the company's account the proceeds of the $200.00 note, discounted August 7, 1911. The referee refused the claim of priority for the $1,200.00, being the aggregate of the two $500.00 and the $200.00 note, afterwards given in lieu of the third $500.00 note, on the ground that the affidavit accompanying the mortgage did not state truly the indebtedness of the company to the bank, and therefore did not comply with the requirement of the New Jersey statute, in order to make the mortgage a lien as against creditors.

The learned judge of the court below affirmed the order of the referee on substantially the same ground, saying that:

"From this affidavit, it would appear that $1,500.00 was then due from the mortgagor to the mortgagee, to secure the payment of which such mortgage was given. This in fact was not true, there being then due only $1,000.00, represented by two notes of $500.00 each; one dated July 5, 1911, and the other July 21, 1911, while the remaining sum of $500.00, represented by a note bearing the last mentioned date, could only become due in case the loan so intended to be evidenced was approved by the bank directors."

We are constrained to think that, in so holding, the learned judge of the court below was in error. As a matter of fact, it seems to us that the cashier of the bank could not have truly sworn on the date of his affidavit that the company was indebted to the bank in any less sum than $1,500.00. The third note had been discounted and placed to the credit of the company. It therefore received the $500.00, for which the third note was given, as truly as if it had received that amount in cash over the counter of the bank.

The bank's money had been loaned for the face amount of the third note. The fact that 14 days thereafter the board of directors disapproved of said loan, and ordered the note to be charged against the account of the company, does not affect the matters sworn to by the cashier on the day he made his affidavit. Apparently the charge back of the note on the company's account was made with the consent of the company, and we do not see how it could otherwise have been made. This at most was a return or payment of the loan by the company on the demand of the bank. There was nothing in the transaction to impugn the good faith of the cashier in making the affidavit, nor were creditors injured by the fact that the sum sworn to as due on July 22d, was reduced through an arrangement between the mortgagor and mortgagee on August 7th following; that is, the amount of the indebtedness as sworn to in the affidavit was reduced by one-third. It seems to us that, by this affidavit both the letter and the spirit of the statute of New Jersey were complied with.

The second ground stated by the appellee in support of the order below, to wit, "that it does not set forth the consideration of said mortgage with sufficient particularity of detail to acquaint creditors of the mortgagor with the complete transaction between the parties to said mortgage," is largely disposed of by what we have already said as to the first ground. The consideration of the mortgage at the time

the affidavit was made was the sum of $1,500.00, represented by the three notes to which reference has been above made. It was a subsisting indebtedness, as represented by said notes from the company to the bank, and, as we have said, was truly stated as such. No greater particularity was necessary to meet the requirements of the New Jersey statute.

The note for $200.00, given August 7th, after the third note for $500.00 had been paid or discharged by the arrangement between the parties on the 5th of August, was a new indebtedness not covered by the affidavit, but in fact excluded therefrom by the specification of the three notes for $500.00 each.

The decisions cited in the state courts of New Jersey are entitled, of course, to entire deference. An examination of them, however, does not convince us that they support the position of the appellee, or require on the facts of this case a different conclusion from that at which we have arrived.

We think the decree of the court below, affirming the order of the referee, should be reversed and the claim of the Riverside National Bank for priority of payment out of the proceeds of the goods and chattels, covered by the mortgage of the said bankrupt, be allowed to the extent of $1,000.00, being the aggregate amount of the two notes first mentioned, with interest thereon to the date of the entry of this decree, and that the claim for priority as to the $200.00 secured by the note of the said bankrupt, dated August 7, 1911, be disallowed.

And it is so ordered.