In re SWAIN.

(District Court, D. New Jersey. July 30, 1919.)

1. CHATTEL MORTGAGES ☞63 — STATUTORY AFFIDAVIT — CONSIDERATION — MONEY "ADVANCED" AND DUE.

The affidavit required by New Jersey Chattel Mortgage Act, § 4 (1 Comp. St. N. J. 1910, p. 463), for validity of a mortgage against others, to be attached to the mortgage and recorded with it if there is not a change of possession of the chattel, and to state the consideration and as nearly as possible the amount due and to grow due thereon, is insufficient, where stating that part of the consideration was money advanced and that a certain sum was then due, no money at the time having been advanced; as "advanced" cannot be held to mean "to be advanced."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Advance.]

2. CHATTEL MORTGAGES ☞63—STATUTORY AFFIDAVIT—UNTRUTHFUL STATEMENT.

Affidavit to chattel mortgage required by New Jersey Chattel Mortgage Act, § 4 (1 Comp. St. N. J. 1910, p. 463), being untruthful in its statement as to part of the considerations, falls as a whole.

In Bankruptcy. In the matter of Harry Swain, bankrupt. On review of the referee's order of January 22, 1919, declaring that a chattel mortgage given by the bankrupt to Harry C. Lincoln was void. Affirmed.

Jess & Rogers, of Camden, N. J., for mortgagee.
Wilson & Carr, of Camden, N. J., for trustee.

RELLSTAB, District Judge. [1, 2] The only question to be decided on this review is whether the affidavit annexed to the chattel mortgage given by the bankrupt to Harry C. Lincoln complies with the New Jersey Chattel Mortgage Act (N. J. Comp. St. vol. 1, p. 463). The pertinent provisions of this act are contained in section 4, which is as follows:

"Every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, having annexed thereto an affidavit or affirmation made and subscribed by the holder of said mortgage, his agent, or attorney, stating the consideration of said mortgage and as nearly as possible the amount due and to grow due thereon, be recorded as directed in the succeeding section of this act."

The findings as certified by the referee are set out in the margin hereof.[1]

The affidavit is untrue in stating that a part of the consideration was moneys advanced to the mortgagor and that the sum of $3,593.48 was then due. At the time of making the affidavit, no moneys had been advanced, and that amount was not due. Some of the money then alleged to have been advanced was subsequently paid over to the mortgagor, but the total amount alleged to be due at the making of the affidavit was never owing.

The contention on behalf of the mortgagee that the word "advanced," used in the affidavit in relation to the moneys loaned, can and should be held to mean "to be advanced," is not tenable. Metropolitan Store & Saloon Fixture Co. v. Albrecht, 70 N. J. Law, 149, 56 Atl. 237, does not support it. In that case it was said that the word "due," used in the affidavit there under consideration, "does not necessarily mean 'owing and payable.' It is often used to signify merely the present existence of a debt to be paid hereafter." There the debt existed at the time the affidavit was made; not so in the instant case. There the debt was owing, but under the agreement not immediately payable. Here no cash had been advanced and no indebtedness for cash loaned was then owing. That the parties to the transaction here under consideration acted in good faith is no reason for changing the plain meaning of the words used in the affidavit. This is not a case where the affidavit stated the consideration with substantial truth, which was held to be sufficient in Howell v. Stone, 75 N. J. Eq. 289, 71 Atl. 914. The defect is not that the affidavit is inartificially drawn or lacking in technical precision. Its defect is the positive assertion that specified sums of money had been advanced to the mortgagor, which, as well as the further assertion that the total sum then said to be due and upon which interest was to be calculated from that time, was untrue to the knowledge of the affiant.

The case of Riverside Nat. Bank v. Predmore (C. C. A. 3) 208 Fed. 673, 125 C. C. A. 571, cited on behalf of the mortgagee as a controlling authority for sustaining the mortgage, is not applicable to the facts of this case. In that case the alleged discrepancy between the amount sworn to be due and what was subsequently found to be actually due was held to be the result of proceedings arising subsequently to the making of the affidavit, and that on the facts as they existed when the affidavit was made the matters sworn to were true.

The fact that the untrue statement in the affidavit in the instant case related only to a part (the lesser part) of the consideration for the mortgage, cannot avail to sustain it in part. The affidavit stands

[1] See note at end of case.

or falls as a whole; if a part is defective, the whole fails. Collerd v. Tully, 77 N. J. Eq. 439, 77 Atl. 1079, affirmed 78 N. J. Eq. 557, 80 Atl. 491, Ann. Cas. 1912C, 78.

The affidavit now being considered falls within the condemnation of In re Novelty Web Co. (decided in this court, opinion by Haight, District Judge) 228 Fed. 1007, affirmed 236 Fed. 501, 149 C. C. A. 553, and the cases cited therein. In that case the affidavit, sworn to June 20, 1917, stated that the consideration was that deponent had that day loaned to the mortgagor the sum of $3,000 for one year, with interest; that the mortgage (dated June 17, 1917) was given to secure the payment thereof; and that there was due and to grow due thereon the sum specified, with interest from June 17th. No money was loaned on June 20th, but it was subsequently advanced in different amounts on June 21st, 22d, 29th, and September 19th.

Both this court and the Circuit Court of Appeals held that the affidavit misstated the true consideration. The appellate court, Woolley, C. J., writing the opinion, held that the requirements of the New Jersey statute had not been complied with, for the reasons, inter alia, that—

"(3) The statement that 'there is due' upon the mortgage the sum of $3,000 is false, in that no mortgage consideration had passed upon the date of the affidavit, and no sum was then due to any one.

"(4) The statement that there is 'to grow due' on the mortgage the sum of $3,000 if intended to cover the contemplated loan by installments, wholly fails to disclose the nature and to verify the truth of the consideration to arise out of that transaction.

"(5) The statement of the debt 'due and to grow due,' considered with reference to the real transaction, is so general and indefinite, and fails so completely to disclose what was actually intended, that it plainly contravenes the fundamental purpose of the legislation. If such a statement were held to be a substantial compliance with the law, the very object of the statute would unquestionably be defeated."

All these grounds apply to the instant case, with the result that the referee's order under review is affirmed.

### NOTE.

#### The Facts.

That the summary of the evidence on which said order was based is as follows: A chattel mortgage was made by the bankrupt to Harry C. Lincoln as trustee of Valentine H. Smith & Co., Robert Shoemaker & Co., and William C. Mitchell, bearing date December 20, 1915, and recorded the same day in the office of the register of deeds of Camden county; said mortgage being given to secure the sum $3,592.48 within one year from the date thereof.

The mortgage was in due and regular form and had attached to it an affidavit purporting to set forth the consideration for said mortgage as required by the New Jersey statute (C. S. of N. J. vol. 1, p. 463), and the said affidavit was made by Harry C. Lincoln personally and not in his representative capacity as trustee. The affidavit follows:

"State of New Jersey, County of Camden—ss.:

"Harry C. Lincoln, the mortgagee in the foregoing mortgage named being duly sworn on his oath says that the true consideration of said mortgage is as follows, viz., goods and merchandise sold and delivered by Valentine H. Smith & Company, Inc., to said Harry Swain, mortgagor, amounting to $669.48 and $100 in cash advanced to the said mortgagor by Valentine H. Smith & Company, Inc., goods and merchandise sold and delivered by Robert Shoemaker &

Company, to the said Harry Swain, mortgagor, amounting to $1,489 and $100 in cash advanced to the said mortgagor by Robert Shoemaker & Company, a note for $1,100 dated August 19, 1915, due December 18, 1915, and made by the said Harry Swain, mortgagor, to the order of William H. Mitchell, indorsed by the said William H. Mitchell and discounted by the said Harry Swain for his own benefit at the Hadden Heights National Bank, and now held by said bank; and $135 in cash advanced to the said mortgagor by the said William H. Mitchell and that there is due on said mortgage the sum of $3,592.48 besides lawful interest thereon from the day of the date hereof."

I find as a fact that at the time of the execution and delivery of the chattel mortgage the bankrupt was indebted to Valentine H. Smith & Co. in the sum of $669.48 for merchandise sold on open account, prior to the giving of the mortgage; that the bankrupt was indebted to Robert Shoemaker in the sum of $1,489 on merchandise sold on open account prior to the giving of the mortgage, and that he was further indebted to William H. Mitchell in the sum of $35, also for merchandise sold on open account prior to the giving of the mortgage; that at the same time William H. Mitchell was contingently liable as an accommodation indorser on a note for $1,100 dated August 19, 1915, and due December 19, 1915, held by the Hadden Heights National Bank, and which at the time of the execution of the chattel mortgage had not been paid by William H. Mitchell, although in fact it was taken up by William H. Mitchell subsequently. I find also as a fact that the bankrupt and the three creditors referred to made an arrangement by which each of the latter was to deposit in the hands of the mortgagee-trustee the sum of $100 and out of this fund of $300 the mortgagee-trustee was to advance from time to time moneys to the bankrupt. Valentine H. Smith & Co. and Robert Shoemaker & Co., some time after the chattel mortgage was given, paid $100 to Harry C. Lincoln, but William H. Mitchell's $100 was never paid and out of the $200 received by him, Harry C. Lincoln advanced to the bankrupt moneys totalling $175, so that Harry C. Lincoln still appears to have on hand a balance of $25 of that $200.

### The Question and the Law.

That the question presented on this review is: "Is there sufficient statement of the consideration for the mortgage set forth in the affidavit to warrant its acceptance under the New Jersey statute and to sustain the validity of the mortgage?"

It is quite apparent that the affidavit to the mortgage does not disclose the true consideration with reference to the transaction, nor to my mind does it approach a statement of the same. I do not think that it falls within the scope of the American Soda Water Company Case, 75 N. J. Law, 721, 68 Atl. 1078, 16 L. R. A. (N. S.) 703, 127 Am. St. Rep. 822, to which counsel for the mortgagee-trustee has referred in his brief, nor to the case of Howell v. Stone, 75 N. J. Eq. 289, 71 Atl. 914. In both of those cases, undoubtedly, the attack upon the affidavit was captious and ultra technical. The mortgage and the affidavit in each of those cases, when taken together, practically disclose the whole transaction. In the case before us this is not the fact. In order to arrive at the true situation or anything approaching it, so far as the mortgage under consideration goes, it becomes necessary to make an extended inquiry. It is only necessary to peruse the affidavit and the statement of facts as given above and the wide variance is at once discernible. In fact no such sum as $3,592.48 is now due on this chattel mortgage, nor was any such sum ever due, as that amount of money under no consideration of the case was ever paid to the bankrupt. There was due to these creditors at the time the mortgage was executed the sum of $2,193.45 for merchandise, and subsequently $175 was advanced out of the special fund and Mitchell paid the $1,100 note which made the total $3,468.48. But at the time the mortgage was executed the $175 had not been paid, and neither had the $1,100. William C. Mitchell was an accommodation indorser and was liable to have to pay the money, but the affidavit does not set out that the mortgage was given to secure his possible liability on this note. The fact of the matter is that at the time the mortgage was given William C. Mitchell was not a creditor to the extent of $1,100.

All of the cases dealing with chattel mortgages in this state go to the point of requiring substantial compliance with the statute and call for an affidavit which shall set forth the situation with sufficient clearness to enable creditors or other persons to acquire full knowledge as to how the debt on the mortgage arose, what was the cause of the debt. The Legislature meant to compel the mortgagee to commit himself to a statement or disclosure of his debt or claims when he made his mortgage a matter of public record, sufficiently precise and explicit to afford all creditors of the mortgagor, in case fraud was suspected, a fair opportunity to ascertain by legal investigation or otherwise whether the mortgage was an honest security or a fraudulent cover. Ehler v. Turner, 35 N. J. Eq. 68. Respondent's counsel suggested that there was sufficient in the affidavit to have enabled those who might be interested to inquire of Mitchell or the Hadden Heights National Bank or some one else as to the standing of the note, but I am of the opinion that the Legislature meant that the affidavit was to show the facts and not require any sort of an investigation outside.

I am therefore of the opinion that the chattel mortgage should be set aside and the fund in question should be relieved from the lien of the same.